Good morning, Your Honor. May I please the court? Good morning. My name is Yvonne Cruz, and I represent the defendant, Appolins, in this case. This case, it's about the denial of a motion for summary judgment on qualifying immunity as an absolute immunity in the District Court of Puerto Rico. The Civil Rights Action Complaints claimed violations of the Fourth Amendment rights, malicious prosecution, and state law violations after the convictions of some of the Appolins were overturned by the Supreme Court of Puerto Rico in the year 2008. The Supreme Court sustained that since the prosecution did not timely supply evidence that the government witness, Zoe Diaz, was a paid informant, there was a reasonable probability that the result of the trial would have been different if this evidence would have been presented with sufficient time prior to the trials. You don't question that, do you? That was a decision of the Supreme Court? No, I don't question that. You don't question the result after all that came out? The result of the… The government dismissed the… Yeah, that's right. At the end, the government did not, the Supreme Court overturned the convictions and the government did not continue with the case. That's what happened. The government of Puerto Rico at that point, the Department of Justice. And then these civil rights cases were filed for malicious prosecution. Discovery was conducted and finished. The positions of all the announced witnesses of the Appolins were taken by the appellants. The appellants made several attempts to depose Zoe Diaz. It is certainly not the appellant's fault that Zoe Diaz did not show up to be deposed. I have a preliminary question. As I read the district court decision, the district court never reached the qualified immunity argument. He simply concluded, or the district court judge concluded, that qualified immunity had not effectively been raised and argued. That's right. The Supreme Court determined that there was not enough argument in the motion for summary judgment to determine qualified immunity. What we sustain is that the district court based the decision to deny qualified immunity on inadmissible evidence to deny the whole motion for summary judgment. But we did raise the… But I didn't read the district court decision that way. The district court simply said it's not getting to the qualified immunity issue because it wasn't effectively raised or properly raised. What the district court said that the only those that deserve what I understood was the only those that could have requested qualified immunity were those that were charged with state law violations. And since we did not claim that there was conditional immunity as to those state law violations, then it was not discussed. However, qualified immunity and conditional immunity under Puerto Rican law is the same. And what the district court stated was that these both, qualified immunity and conditional immunity, both shield the government officials that are performing discretionary powers from civil liability. And how we couldn't argue much more because there was no evidence on the records of the evidence that was presented by the police, what we thought was the admissible evidence that was presented by the police. There was nothing about the Secretary of Justice's actions, nothing about the other officers that were included for us to argue much more than saying there is nothing in the evidence presented at that time for us to say that there was, that qualified immunity was not applicable. Other than the statements of the witness that you said. Exactly. They were all denying that they knew about their participation. Their only evidence of the athletes is this former testimony of Zoe Diaz. And at the time that we presented the motion for summary judgment, that testimony was presented belatedly throughout the discovery process and also. Let me ask you, do we get to review, an interlocutory review, the district court's decision that that evidence was something the court could rely on? We understand that it's unreliable and untrustworthy, exactly. How can we reach that now on interlocutory review, that evidentiary rule? Because they submitted a motion, the athletes submitted a motion to eliminate afterwards and the district court decided the admissibility of the evidence after issuing the opinion in the case denying motion for summary judgment. Certainly the procedures here were not as usual. The evidence provided regarding these statements was provided barely a couple days before the deadline of the discovery. There were 3,000 pages of documents that were forwarded to us and left for us in a copy center for us to review. And we had a deadline for the motion for summary judgment. Come back to my question. We don't sit here on interlocutory review, do we, and decide whether the court should have or should have not let something be filed after a deadline. I thought we just addressed questions of law on interlocutory review. Yes. And we are requesting that this court address the issue that the evidence presented at that time was inadmissible. And therefore a motion or an opinion regarding a motion for summary judgment cannot be based on inadmissible evidence. That's what we sustain. And that is a question of law. We understand that the evidence presented that she was a witness that preferred not to testify does not make her an unavailable witness as per Rule 804. We understand that the applicants did present that. Well, I think it's more than that, though, isn't it? They can't find to even subpoena her. She didn't make it to exactly. We subpoenaed her and she didn't make it to be deposed. Therefore, all the evidence regarding her testimony, the court said if she's not here, the court said so in an order of June 26, 2013. If she's not here, then any evidence regarding her will not be admitted. But she's a missing witness. Excuse me? She's a missing witness. She placed herself unavailable. She's making some. She's a missing witness. And the parties have nothing. They've tried to get her to come. They've been unable to. We don't. The only. The court didn't make that assessment prior to the, for us to submit a motion for summary judgment or prior to deciding. Well, is that a fact or not a fact of the record? That they tried to get her and have been unable to? We don't have any evidence on the record that what were their, what happened to her except for some statement made after the fact. After she was missing. Let me make a suggestion. You keep coming back to the timing that stuff happened and that the judge didn't do this until after the fact. I don't think that's going to help you in this involuntary review. I think Judge Taraway's question goes to isn't it clear that she met the unavailability? We understand that what the rule calls for is not this same exact situation. When she makes herself unavailable to be deposed after making self-serving statements involving other people in a criminal action, and this is a civil case, that is not the kind of evidence that should be admissible for us to sustain. What you're saying would be true if she were a party and she was refusing to be deposed. This is a witness in a case. She's also a party, Your Honor. She's a defendant. But she's not suing your clients. No, she's not suing my clients, but she's also a party. If she flees and won't cooperate with the plaintiffs, then she's unavailable as far as the plaintiffs are concerned. Then her testimony as the only key witness relevant to the issue of malicious prosecution should not have been admitted. Why not? Because she created her own unavailability. But that's very often true with a witness. I mean, they could flee, they could go hide. They become unavailable. If they themselves are trying to exploit that unavailability, then your point works. But the plaintiffs didn't make her unavailable. Well, we don't have any evidence what they did to keep her, their own very perfect witness available either. Is that your only argument about why her testimony is not admissible under 804B3? No. We understand also that the motive in the examination done on her testimony in 2001 is different from the motives. But that's irrelevant under 804B3. Under 804B3, it's simply whether it's a statement against interest. Well, it also stated, the district court also said that the parties were under the same motive and had the same interest when she was interrogated. And we understand that in that case, the parties in 2001, the appellants did not participate of that discussion, did not participate of that hearing. It was only the government. I think you're losing me here. Under 804B3, that's the rule that says an out-of-court statement against interest gets admitted notwithstanding the hearsay rule. Are you saying there's some case that says for a statement against interest to be admissible, there must have been some similar motive to cross-examine? We understand that it was not against her self-interest, for one thing, because she is spreading her blame upon others. Well, she's liable civilly and criminally for what she's saying. She was never charged. She is admitting to perjury. That's against interest. But she was never charged for perjury. It doesn't make any difference. It says, when made, had so great a tendency to expose the declarant to civil or criminal liability. That's how the rule reads. But in that statement, what she's doing, she is blaming others for what she did. And in that sense, it's convenient for her. And that's why we sustain that it is not necessarily against her interest only. She would be better off if she'd said nothing than if she said what she said, would she not? Yeah, I guess so. So it's therefore against her interest. She worsened her situation by speaking, albeit bringing down others with her. But she certainly worsened her situation, didn't she? She placed others, and that's as reality. But she placed herself at risk by admitting to perjury. Yes and no. Because the fact is that she remained in Puerto Rico, and she remained here for the longest time after she made those statements. And she was never charged by the courts of Puerto Rico. She was never charged with perjury, and nothing happened to her. And that is a fact. Do you think generally against the person's interest to come in and raise their hand and swear that they perjured themselves? Yes, I know, Your Honor. It's true. She perjured herself. I understand that. But what I'm saying is- It is not against her interest. It is against her interest. Yeah, it was. We understand that here in this particular case, the court should have given the parties an opportunity to discuss whether those transcripts were appropriate, whether those recordings were any additions or alterations, or whether anything in that particular evidence could have been relied upon or incomplete, as we understand it was. Nothing was evidenced by the appellees in their opposition to sustain also to retain all the appellants in this case. These, for example, to Fuentes Agostini, or former agent Tirado, or former agents Colon and Sullivan, in this case, in their support of historic capacity. For which reason we contend that no liability, no immunity should have been conferred to them. This is qualified immunity you're talking about? Yes, because there was- So I need to ask you one question or make a comment, I guess. In trying to parse through your qualified immunity argument, which is contained in two pages, I think maybe three, 49 to 51, I looked for the backup for your position and I saw a citation to about 600 pages of the record. And I can assure you I didn't go looking to see what the support was. We have an anti-ferreting rule. I know. So what happened here? What happened is that there are so all throughout the discovery that the discovery was very extensive. That's one thing. We took the depositions of all the appellees and all the witnesses that they presented. And the statement of material facts revealed that there was no evidence to sustain in that any of these agents acted outside their authority or acting outside their duties. And all of those statements revealed that effectively there was no evidence whatsoever in the record showing anything regarding these other appellants. There were nine appellants involved in this case, including the former superintendent of the police and other supervisors. And all of them we understand that there was no evidence whatsoever included in there. There was not much to say because there was nothing else but that evidence that was never presented by the appellees who had the burden of presenting or submitting something about their actions. Who is representing ADA Redondo? Who is representing who? And we have a whole separate argument with respect to him that we haven't heard. We should just rely on the briefs for that. Yes, we do. Thank you. Good morning, Mr. Vasquez. May it please the court, my name is Pedro Vasquez on behalf of the appellees in this matter. And two consolidated cases before the district court. The facts of this case are pretty straightforward. In the late 1990s in the Guayama area of Puerto Rico, there was a rash of murders. The government facing incredible pressure to clarify and obtain convictions. They relied on this one particular confidential informant to charge, establish a probable cause and to convict. This woman was a lady in her 40s with severe mental deficiency. And she was used in three separate murder cases to secure probable cause and secure convictions. In the first two cases, which are the ones that involve this appeal, the prosecution obtained convictions. Counsel, what I'm interested in is knowing whether we have jurisdiction over this appeal and to the extent that we do, what are the limits? Being candid with this court, it was a real tough question. I found one case, it's the Whitlock case from the Seventh Circuit. It's cited in my brief in where I address the issue of jurisdiction. I am no closer to be able to tell you definitely yes or no. The facts in that case are remarkably similar to here. The Seventh Circuit proceeded to analyze the entirety of the case, the admissibility of former statements against interests under 804, which incidentally 804B3 was not briefed in the district court or in the opening brief in this case. But getting back to the jurisdiction of this court, I'm not sure. My gut reaction is the court may have jurisdiction in prior civil rights cases reviewing interlocutory appeals at the summary judgment stage. This court has ruled numerous times that when the facts are inextricably intertwined, they will review the issue of qualified immunity. One of the issues that presents a unique aspect, a situation is the admissibility of this evidence. It's, I'm not sure what the right answer is. But going back to the Whitlock case, the Seventh Circuit in 2012 said after they reviewed the entirety of the case, they made an initial assessment of the admissibility and said we don't have jurisdiction. The admissibility of prior statements under the rules of evidence, although it is a legal question, it's not necessarily something that's going to give you an immediate interlocutory review. My sense from reading that case is that the Seventh Circuit struggled with the decision there. And that was my reading and my humble opinion to this court. My, getting back and being as straightforward as I can, I suspect that this court does have jurisdiction. If you would assume for a second that the missing witnesses statement that they made, fits in as a statement against interest, and assume there's plenty in there against agents, I think Baez and Figueroa. As I read her statement, though, everything, the only thing she says about Redondo is that during the trial, while she was being housed as a cooperating witness, she fell ill, got sent to Bayamone Hospital in distress, and Redondo offered to have an asthma therapy machine provided for her, but then never did. I don't see, is there anything else at all that she says about Redondo? Against Redondo, not particularly. There's another ADA that's also sued here. But I'm sticking with Redondo. No, sir, Judge, the answer to your question categorically is no, there's nothing else. So how do you sue Redondo for that? Because Redondo was part of this prosecution team, and although he didn't necessarily utter anything else, he's part of the proceedings. But he's a prosecutor, he's got absolute immunity unless he's trying to create false evidence, right? Yes, correct. So where's the evidence that he tried to create false evidence? Well, under the circumstances here, when there had been overt offerings of getting back her custody of the children. But there's nothing in the record that says he was aware of any of that. Well, Judge, I think it stands to reason that if he's part of the prosecution and he's involved in the case preparation of this, that he would be. So you want us to rule that if one person on a 10-person prosecution team tries to bribe a witness or offer them or does something improper, you can automatically, based on that fact alone and without any additional evidence, sue every other prosecutor on the team who had anything to do with the case? Well, that's pretty much what we did. Does the court have any other issues that they'd like addressed? Thank you. Okay. Thank you.